UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| BRENDA COTHRAN § | |
| § | |
| v.  § | CIVIL NO. 4:20-CV-481-SDJ |
| § | |
| ABDUL KOOMSON a/k/a EL RAY § | |
| AUTO PARTS, ET AL § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Brenda Cothran's *Ex Parte* Motion for Leave of Court to Serve Third-Party Subpoenas *Duces Tecum* Prior to the Service of Any Defendant. (Dkt. #12). After reviewing the motion and the applicable law, the Court **GRANTS** the motion.

### I. BACKGROUND

Brenda Cothran alleges that Defendants victimized and defrauded her by operating an international "romance" fraud conspiracy, of which Cothran was a target. Around April 2017, one of the John Doe Defendants initiated communications with Cothran on Facebook, and the communications quickly developed into an online, romantic relationship—or so Cothran believed. Over the next several months, at the John Doe's request, Cothran sent the John Doe an estimated $166,513. (Dkt. #12 at 2). Later suspecting that she had been conned, Cothran hired a private investigator who uncovered what appeared to be an organization managing the John Doe's Facebook page in an effort to fraudulently induce Cothran to send the organization money. (Dkt. #1 ¶¶106, 158). For these alleged wrongs, Cothran seeks

remedies for violations of the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. (Dkt. #1).

Despite the private investigator's best efforts to locate and identify the principal actors involved in the alleged fraud, Cothran still does not know many of the precise identities of the Defendants. However, Cothran has obtained the email addresses of at least some of these principal actors. To discover the alleged fraudsters' identities, Cothran seeks discovery from three third-party Internet Service Providers ("ISPs")—Yahoo.com, Gmail/Google, and Linux. (Dkt. #12 at 7–8).

Cothran further alleges that she used her bank, Bank of America, to wire $30,000 to a Capital One Bank account held by Defendant Rayzbung Enterprises, Inc., ("Rayzbung"), whom Cothran alleges is a phony company and part of the conspiracy. (Dkt. #1 at 16, 51). After Capital One Bank was made aware of a potentially fraudulent transfer, it froze the $30,000 in a holding account. (Dkt. #12 at 3). Capital One Bank has informed Cothran that it will not provide Cothran any information about the wire transfer without a subpoena. (Dkt. #12-7). Cothran requests discovery from Capital One Bank and Bank of America to document and establish the allegedly fraudulent circumstances of the transfer of money to the Capital One Bank account. Specifically, Cothran asks for "correspondence between Capital One and Bank of America, internal correspondence within both banks, internal memoranda and notes regarding investigation into the transaction (from both banks), all documents and reports about the transaction generated by either

bank, and any other documentation relating to either bank's investigation of the transaction in question . . . ." (Dkt. #12 at 9).

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 26(d)(1) provides that a party may not seek discovery from any source before the parties have a conference, except in proceedings preempted by Rule 26(a)(1)(B), or when authorized by the Federal Rules, by stipulation, or by court order. FED. R. CIV. P. 26(d)(1). Although the Federal Rules do not provide an exact standard for a court's granting such authorization, several other federal courts within the Fifth Circuit, including the Eastern District of Texas, have used a "good cause" standard to determine whether a party is entitled to early discovery. *See, e.g.*, *Huawei Techs. Co. v. Yiren Huang*, No. 4:17-CV-893, 2018 WL 10127086, at *1 (E.D. Tex. Feb. 13, 2018); *Combat Zone Corp. v. Does 1–2*, No. 2:12-CV-00509, 2012 WL 6684711, at *1 (E.D. Tex. Dec. 21, 2012); *Ensor v. Does 1–15*, No. A-19-CV-00625, 2019 WL 4648486, at *1 (W.D. Tex. Sept. 23, 2019); *Greenthal v. Joyce*, No. 4:16-CV-41, 2016 WL 362312, at *1 (S.D. Tex. Jan. 29, 2016); *St. Louis Grp. v. Metals & Additives, Corp.*, 275 F.R.D. 236, 239–40 (S.D. Tex. 2011).

To analyze the existence of good cause, "a court must examine the discovery request 'on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances.'" *Huawei*, 2018 WL 10127086, at *1 (quoting *St. Louis*, 275 F.R.D. at 239). In a good-cause analysis, the court weighs five factors: (1) whether the plaintiff has made a prima facie case of actionable harm; (2) the specificity of the discovery request; (3) the absence of alternative means to

obtain the subpoenaed information; (4) whether there is a central need for the subpoenaed information to advance the claim; and (5) the user's expectation of privacy. *Combat Zone*, 2012 WL 6684711, at *1 (citing *Well Go USA, Inc. v. Unknown Participants in Filesharing Swarm*, No. 4:12-cv-00963, 2012 WL 4387420, at *1 (S.D. Tex. Sept. 25. 2012)).

Specifically, when "a party seeks a subpoena for identifying information of anonymous Internet users . . . 'the court must also balance the need for disclosure against the defendant's expectation of privacy.'" *Ensor*, 2019 WL 4648486, at *2 (quoting *Malibu Media, LLC v. Doe*, SA-19-CV-00601, 2019 WL 3884159, at *1 (W.D. Tex. Aug. 16, 2019)). The court, when determining whether to authorize early discovery, enjoys "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Arista Records LLC v. Does 1–19*, 551 F.Supp.2d 1, 6 (D.D.C. 2008) (quoting *Crawford–El v. Britton*, 523 U.S. 574, 598, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998)).

### III. DISCUSSION

The Court concludes that Cothran has demonstrated good cause and thus is entitled to limited early discovery for the purpose of identifying the unknown defendants.

**A. Cothran Has Made a Prima Facie Case of Actionable Harm.**

"To establish a prima facie civil RICO claim, a plaintiff must allege: (1) a substantive predicate violation of 18 U.S.C. § 1962; (2) injury to his [or her] business or property; and (3) a causal connection between the racketeering activity and the

4

injury." *Varela v. Benitez Gonzales*, No. 3:13-CV-1278, 2013 WL 5658606, at *4 (N.D. Tex. Oct. 17, 2013) (quoting *Simpson v. Sanderson Farms, Inc.,* No. 7-12-cv-28, 2012 WL 4049435, at *3 (M.D. Ga. Sept. 13, 2012)). Cothran has established a prima facie civil RICO claim, and thus this factor weighs in favor of granting her motion for leave to serve third-party subpoenas. *Combat Zone*, 2012 WL 6684711, at *2.

To establish the first prong of a Section 1962 claim, a plaintiff must adequately plead that a defendant is: "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Abraham v. Singh,* 480 F.3d 351, 355 (5th Cir. 2007) (quotations omitted).

Under RICO, a "person" is "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). A "RICO 'person' must be one that poses or has posed a continuous threat of engaging in acts of racketeering." *Id.* In most instances, courts have held, "pleading the existence of a 'pattern of racketeering activity' will supply this element of continuity to the RICO person." *Id.*

Next, a "racketeering activity," also referred to as a RICO "predicate act," is any act listed in 18 U.S.C. § 1961(1),*Varela*, 2013 WL 5658606, at *4, while a "pattern of racketeering" requires at least two RICO predicate acts that are (1) related, and (2) "amount to or pose a threat of continued criminal activity." *Delta*, 855 F.2d at 243; *Abraham*, 480 F.3d at 355 (citing *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996) and *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989)).

5

Finally, a RICO "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

Cothran has alleged all three elements. In particular, Cothran alleges that each of the individual Defendants is a "person" as defined in Section 1961(3) of RICO. (Dkt. #1 at 53). Cothran further alleges that each of the individual Defendants conducted, participated in, or conspired to conduct or participate in a pattern of racketeering activity in connection with the defrauding enterprise's conduct. (Dkt. #1 at 53). She claims that this enterprise is an "association in fact." (Dkt. #1 at 53); *see St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 (5th Cir. 2000) ("[A] RICO enterprise can be either a legal entity or an association-in-fact."). Cothran alleges in detail how Defendants conspired to lure Cothran into believing she was wiring funds to an individual romantic suitor when, in truth, she was wiring funds to the criminal enterprise. She specifically alleges that Defendants engaged in a pattern of RICO predicate acts when they "repeatedly and systematically utilized wire fraud and bank fraud to defraud victims, divert the money to their own benefit, launder their proceeds, . . . and conceal the existence of their Enterprise." (Dkt. #1 at 70); *see* 18 U.S.C. § 1961(1) (listing, among others, wire fraud and money laundering as RICO predicate acts). Cothran has therefore met the first prong of her prima facie RICO case.

Under the second prong of a prima facie Section 1962 violation, a civil RICO plaintiff must allege that he or she "suffered injuries 'by reason of' [the defendant's

violation of § 1962].” *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.,* 868 F.2d 740, 746 (5th Cir. 1989) (quoting 18 U.S.C. § 1964(c)). Cothran has alleged that, as a direct and proximate result of Defendants' RICO violations, Cothran suffered extensive injuries, including damages of at least $153,943.32. (Dkt. #1 at 71). Cothran has met the second prong of a prima facie showing.

For the third prong, a civil RICO plaintiff must assert his or her "right to sue" by pleading facts that demonstrate that the defendant's violation of Section 1962 was both a "but-for" and "proximate" cause of his or her injuries. *Holmes v. Sec. Inv'r Prot. Corp.,* 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). Cothran has alleged that her injuries were the "direct and proximate result" of Defendants' RICO acts. Cothran has met the third prong of her prima facie case.

**B. Cothran's Discovery Requests are Specific.**

From the ISPs, Cothran seeks only the anonymous internet users' contact information—the users' names, physical addresses, and IP addresses—so that Cothran can properly serve them. This request is specific enough to weigh in favor of granting Cothran's motion as to the ISP subpoenas. *See Combat Zone*, 2012 WL 6684711, at *2 (holding that, where the subpoena sought only the name, addresses, phone numbers, email addresses, and MAC addresses of the unidentified defendant, the discovery request was sufficiently "specific").

Likewise, Cothran's requested discovery concerning the wire transfer to Capital One Bank is sufficiently narrow and specific to support granting the requested subpoenas. Cothran seeks only documents and communications from the two banks concerning the allegedly fraudulent $30,000 wire to Rayzbung. This

7

request is neither too broad nor too vague, and thus the specificity factor also weighs in favor of granting Cothran's motion as to the bank subpoenas.

## C. Cothran Has No Alternative Means to Obtain the Subpoenaed Information.

Having undertaken significant steps to identify Defendants, including the hiring of a private investigator, Cothran has no reasonable alternative means of obtaining the identifying information of the Defendants. *See Combat Zone* 2012 WL 6684711, at *2 (finding that "without this Order, therefore, there does not seem to be any way for [Plaintiff] to identify the Defendants and, thus, to properly serve them"). Cothran, left with only the email addresses of the three individuals listed in the motion, will be able to locate the identifying information of the account creators only through a subpoena to the ISPs. Nor does Cothran have any alternative means of obtaining the documents and communications concerning the allegedly fraudulent wire transfer to Rayzbung. The banks alone have access to those documents and communications and have refused to produce them absent a subpoena. Thus, the alternative-means factor also weighs in favor of granting Cothran's motion.

## D. Cothran Has a Central Need for the Subpoenaed Information to Pursue Her Claim.

Without the names and addresses of the Defendants, Cothran will be unable to properly serve them. Therefore, Cothran's claims against Defendants would be unable to advance without the information requested in the ISP subpoenas. Thus, the fourth factor—the movant's need for the subpoenaed information—favors granting Cothran's motion as to the ISP subpoenas. *See Combat Zone*, 2012 WL 6684711, at *2 (holding that, because service is impossible without it, identifying information is a

central need for a plaintiff). Cothran's *bank* subpoenas, in contrast to the ISP subpoenas, do not present the same need to procure information prior to service. However, the information that Cothran seeks from the banks is relevant to Cothran's claims and could conceivably assist in her investigation of her claims against Defendants. On balance, therefore, the central-need factor neither favors nor disfavors granting Cothran's motion as to the bank subpoenas.

### E. Defendants' Privacy Interests are Adequately Protected.

Finally, the Court considers the privacy interests at stake and the implications of this factor on Cothran's requests for leave to pursue subpoenas. Courts have held that "[i]nternet subscribers do not have an expectation of privacy in their subscriber information as they already have conveyed such information to their Internet Service Providers." *West Bay One, Inc. v. Does 1–1,653*, 270 F.R.D 13, 15 (D.D.C. 2010); (citing, among others, *Guest v. Leis,* 255 F.3d 325, 335–36 (6th Cir. 2001) ("Individuals generally lose a reasonable expectation of privacy in their information once they reveal it to third parties.")); *see United States v. Orisakwe*, 624 F.App'x 149, 154 n.2 (5th Cir. 2015) (per curiam) ("We note that every circuit to have addressed the issue has held that there is not a reasonable expectation of privacy in IP addresses that implicates the Fourth Amendment."). Because the scope of Cothran's requested subpoenas is specific to names, physical addresses, IP addresses, and available contact information, and because the Court will enter a protective order by separate order, Defendants' privacy interests will be adequately protected. Therefore, the protection-of-privacy-interests factor also favors granting Cothran's motion as to the ISP subpoenas.

9

As to the bank subpoenas, the Court does not interpret Cothran's request as seeking private financial information. Instead, she asks for the banks' documents and communications concerning only the allegedly fraudulent wire transfer to Rayzbung. To the extent that Cothran's request does not seek private account information, the Court concludes that this factor favors granting Cothran's motion as to the bank subpoenas as well.

\* \* \*

Based on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances, and considering the five good-cause factors above, the Court concludes that Cothran has shown good cause to support the granting of her motion. *Huawei*, 2018 WL 10127086, at \*1 (quoting *St. Louis*, 275 F.R.D. at 239); *Combat Zone*, 2012 WL 6684711, at \*1 (citing *Well Go USA*, 2012 WL 4387420, at \*1).

### IV. SCOPE OF SUBPOENAS

In balancing the need for disclosure of identifying information of anonymous internet users against the defendants' expectation of privacy, a subpoena must be specific and adequately protect the defendants' privacy interests. *Well Go USA*, 2012 WL 4387420, at \*2. "Courts typically include a protective order to allow a defendant the opportunity to contest the subpoena, thereby protecting the user's expectation of privacy." *Ensor*, 2019 WL 464846, at \*3 (citations omitted).

Cothran's request that the ISP subpoenas "seek only the information necessary to identify the individuals who defrauded Cothran through fictitious email addresses,

particularly their names, physical addresses, IP addresses, and available contact information such as phone numbers or other email addresses" is sufficiently narrow and specific to adequately protect the users' privacy interests when combined with an appropriate protective order. *See Combat Zone Corp. v. Does 1–5*, No. 3:12-cv-4005, 2012 WL 5289736, at *1 (N.D. Tex. Oct. 26, 2012) (granting leave to subpoena the names, addresses, telephone numbers, email addresses, and Media Access Control (MAC) addresses of Doe defendants); *see also Ensor*, 2019 WL 4648486, at *4 (explaining that the discovery sought from website operators was "narrowly tailored to the extent that it [sought] the anonymous Internet user's name, physical address, and IP address" but that the plaintiff's request for "any other information" relating to each anonymous user was not narrowly tailored and was acceptable "only to the extent it [sought] other contact information, i.e., the user's email address"). The Court interprets the scope of Cothran's discovery requests as being limited to this specific contact information.

Similarly, Cothran's proposed subpoenas to Bank of America and Capital One Bank are sufficiently specific and do not invade any Defendant's privacy interests. The Court interprets Cothran's discovery requests as being limited to the following documents concerning Cothran's wiring $30,000 to Rayzbung: correspondence between the banks, internal correspondence, internal memoranda and notes, all bank-generated documents and reports about the transaction, and any other documents relating to either bank's investigation of the transaction.

## V. Conclusion and Protective Order

For all the foregoing reasons, the Court **GRANTS** Cothran's *Ex Parte* Motion for Leave of Court to Serve Third-Party Subpoenas *Duces Tecum* Prior to the Service of Any Defendant. (Dkt. #12).

Further, the Court enters the following Protective Order sua sponte. To protect the respective interests of the parties and non-parties and to facilitate the progress of disclosure and discovery in this case, it is further **ORDERED** that:

1. Cothran may immediately serve Rule 45 subpoenas to Yahoo.com, Gmail.com, and Linux ("ISPs"), which will be limited to the name, IP address, email address, and physical address of the currently unknown Defendants who created and used the email addresses listed in Cothran's Complaint (Dkt. #1 at 10, 20, 25). A copy of this Order must be attached to each subpoena.

2. Each ISP will have twenty days from the date of service of the Rule 45 subpoena to serve the identified Defendants with copies of the subpoena and this Order. Each ISP may serve the Defendants using reasonable means, including written notice sent to the Defendant's last known address, using either email or overnight mail delivery.

3. The Defendants will each have thirty days from the date of service of the Rule 45 subpoena and this Order to file any motions with the Court contesting the subpoena as well as any request to litigate this subpoena anonymously. No ISP may turn over a Defendant's identifying information before such thirty-day period has lapsed. Further, if a

    Defendant or ISP files a motion to quash or modify the subpoena, the ISP may not turn over any information to Cothran until the Court rules on that motion. A Defendant or ISP who moves to quash or modify, or to proceed anonymously, must immediately notify all ISPs so that the ISPs are on notice not to release any of the other Defendants' identifying information until the Court rules on that motion.

4.     If the thirty-day period expires without any motion contesting the subpoena, the ISPs will have ten days thereafter to produce the subpoenaed information to Cothran.

5.     Each ISP must take reasonable steps to preserve the subpoenaed information pending the resolution of any timely filed motion to quash. Any ISP may file a motion to raise any undue burden caused by this preservation obligation.

6.     Any information ultimately disclosed to Cothran in response to a Rule 45 subpoena may be used by Cothran only for the purpose of protecting her rights as asserted in her Complaint. The information disclosed may only be used by Cothran in this litigation and may not be disclosed other than to counsel for the parties.

**So ORDERED and SIGNED this 3rd day of November, 2020.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE